IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUSTIN D. REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 12 cv 873 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| NORFOLK SOUTHERN RAILWAY | ) |
| COMPANY, a Virginia corporation, d/b/a | ) |
| NORFOLK SOUTHERN RAILWAY, | ) |
| | ) |
| Defendant. | ) |

**<u>Memorandum Opinion and Order</u>**

Justin D. Reed ("Reed") alleges that Norfolk Southern Railway Company ("Norfolk") violated the Federal Rail Safety Act, 49 U.S.C. § 20101 *et seq.* ("FRSA"), by discharging him in retaliation for reporting a workplace injury. Norfolk moves for summary judgment, arguing that due to the FRSA's Election of Remedies provision, 49 U.S.C. § 20109(f), Reed is barred from seeking relief under the FRSA because Reed already elected to pursue a remedy under the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA"), another provision of law. For the reasons stated herein, this Court denies NORFOLK's motion for summary judgment.

**Background**

Unless otherwise noted, the following relevant facts are undisputed. Reed has been a Trackman for Norfolk since June 20, 2005. (Defendants' Local Rule 56.1 Statement of Material Facts, Dkt. 22 at ¶ 7). As a Trackman, Reed is represented by the Brotherhood of Maintenance of Way Employees Division/International Brotherhood of Teamsters ("the union"). (*Id.*). The system for disciplining employees under the collective bargaining agreement, entered into by

1

Norfolk and the union, required that Norfolk must first send the employee a charge letter notifying the employee of the alleged rule violation and instructing the employee to appear at an investigative hearing conducted by an Norfolk officer. (Dkt. 22 at ¶ 5). The hearing occurs regardless of whether the employee appears. (Kerby Supp. Decl., Dkt. 34-1 at ¶ 5). If that hearing results in an adverse disciplinary decision, the employee may appeal to the highest designated Norfolk officer. (Dkt. 22 at ¶ 5). The matter may then be appealed to an arbitration board established under Section 3 of the RLA for a final and binding decision. (*Id.*). While the RLA creates these boards, they may interpret only the collective bargaining agreement and not public law. 45 U.S.C. 153 First[1]; *See e.g.*, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53, 94 S. Ct. 1011, 1022, 39 L. Ed. 2d 147 (1974) ("An arbitrator's source of authority is the collective-bargaining agreement. . . . The arbitrator, however, has no general authority to invoke public laws . . . .").

In February of 2010, Reed received notice to attend an investigation to determine his responsibility for violating a Norfolk safety rule. (Dkt. 22 at ¶ 8). The result of that investigation was Reed's termination, after it was determined that he had violated the Norfolk code of conduct by making false and inconsistent statements in a report regarding an on-duty injury. (Dkt. 22 at ¶ 8, 9). Reed appealed to the highest Norfolk officer designated to handle such matters, as was his right under RLA § 3 First (i). (Dkt. 22 at ¶ 10). His appeal was denied. (*Id.*). Reed then appealed to a Public Law Board alleging that his dismissal was arbitrary, based on unproven charges, and in violation of the collective bargaining agreement entered into between the union and Norfolk. (Dkt. 22 at ¶¶ 4, 11). The Public Law Board ultimately reinstated Reed, but without back pay, concluding that Reed's actions did not constitute grounds for dismissal. (Dkt. 34-1, Ex. B, p. 3).

However, prior to the decision of the Public Law Board, Reed filed an administrative

---

[1] Subsections in this statute are represented by ordinal name rather than a number.

claim with the Occupational Safety and Health Administration ("OSHA"), alleging that his discharge by Norfolk violated § 20109 of the FRSA. (Dkt. 22 at ¶ 15). The relevant provision of the FRSA prohibits a rail carrier from discharging an employee for notifying the carrier of a work-related injury. 49 U.S.C. § 20109(a)(4). Reed then gave notice of his intention to exercise his right to file a de novo action in this court. (Dkt. 22 at ¶ 16).

**Legal Standard**

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison,* 423 F.3d 763, 773 (7th Cir.2005). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,* 656 F.3d 540, 547 (7th Cir.2011).

**Discussion**

On summary judgment, Norfolk argues that it is entitled to judgment as a matter of law because the election of Remedies provision of the FRSA bars Reeds claim. Reed counters that, while the arbitration procedures are created under the RLA, it is ultimately the collective bargaining agreement that provides the substantive rights. Therefore, according to Reed, he can pursue his claim here because the collective bargaining agreement is not "another provision of law" within the meaning of the FRSA.

Resolution of the issue before the Court requires determination of the meaning of the FRSA's Election of Remedies provision. Therefore, the Court will begin by reviewing the

3

statutory background.

*Railway Labor Act*

The Railway Labor Act of 1926 governs relations between railroad carriers and their employees, and mandates creation of collective bargaining agreements to establish rates of pay, rules, and working conditions, and to settle all disputes in a way that avoids interruption to commerce or the operation of the carrier. *See* 45 U.S.C. § 152 First. Section 3 of the RLA establishes a framework for resolving disputes between an employee and carrier over the interpretation of such agreements; first through the grievance procedure in the collective bargaining agreement, and then through mandatory arbitration before the National Railroad Adjustment Board or a special board of adjustment established by the railroad carrier and the union. 45 U.S.C. § 153 First (i), Second; *see also Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, --, 130 S. Ct. 584, 591 (2009).

*Federal Railroad Safety Act*

The FRSA was enacted "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C.A. § 20101. After the FRSA's passage, Congress became aware that railroad workers who complained about safety conditions experienced retaliation for their actions. *See Consol. Rail Corp. v. United Transp. Union*, 947 F.Supp. 168, 171 (E.D. Pa. 1996) (citation omitted). In 1980, Congress responded with amendments that prohibited rail carriers from retaliating and discriminating against employees who, *inter alia*, reported violations of federal railroad safety laws or refused to work under hazardous conditions. *See* Federal Railroad Safety Authorization Act of 1980, Pub. L. No. 96-423, § 10, 94 Stat. 1811, 1815 (1980). Following the 1980 amendments, employees who

experienced such retaliation could seek relief through the arbitration procedures set forth in RLA § 3, 45 U.S.C. § 153. *See id.* at § 10, § 212(c)(1), 94 Stat. 1811, 1815.

In 2007, Congress amended the FRSA to include additional categories of protected conduct. *See* Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53, § 1521, 1221 Stat. 266, 444 (2007). The 2007 amendments also eliminated the requirement that FRSA complaints proceed through the RLA arbitration process, instead transferring authority to investigate and adjudicate such complaints to the Secretary of Labor. Pub. L. No. 110-53, § 1521(c), 1221 Stat. 266, 446. Finally, Congress added two provisions to the FRSA which specify that nothing in § 20109 preempts or diminishes other rights of employees, and that the rights provided by FRSA cannot be waived. 49 U.S.C. §§ 20109(g), (h). These amendments were an attempt to "enhance[] administrative and civil remedies for employees" and "to ensure that employees can report their concerns without the fear of possible retaliation or discrimination from employers." H.R. Rep. No. 110-259 at 348 (2007) (Conf. Rep.).

It is fundamental that statutory construction begins with the statute itself. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990). Additionally, "[i]n ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *See also Lexecon Inc. v. Milberg Weiss*, 523 U.S. 26, 36 (1998).

1. *"Another Provision of Law"*

This Court begins its analysis by examining the language of § 20109(f), the Election of Remedies Provision as amended in 1980, which states that "[a]n employee may not seek

protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier."[2] The question before this Court is whether Reed's initiation of arbitration under the collective bargaining agreement is an election of remedy under the meaning of Section 20109(f).

In *Brotherhood of Locomotive Engineers v. Louisville N.R.*, 373 U.S. 33, 38 (1963), the Supreme Court held that arbitration authorized by the RLA provides a "mandatory, exclusive, and comprehensive system for resolving [railroad] grievance disputes." Additionally, the fact that a party relies on the law to enforce a right in a CBA is not the same as a right created under a provision of law. *See Graf v. Elgin, Joliet and Eastern Railway Co.*, 697 F.2d 771, 776 (7th Cir. 1983) ("Nor does the fact that an activity is regulated by a federal statute, as collective bargaining in the railroad industry is regulated by the [RLA], mean that disputes between private parties engaged in that activity arise under the statute."); *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52-53 (1974) (determining that contractual rights under a CBA are distinct from federal statutory rights as they had "legally independent origins."). Therefore, the arbitration proceeding is not an "election" of a remedy because the tribunals and National Railroad Adjustment Boards are mandatory.

Here, Reed exercised his right under the collective bargaining agreement to have an appeal heard through arbitration before a board whose authority extends only to interpreting the collective bargaining agreement. The statute that creates these boards makes clear that they may

---

[2] Congressman James Florio, manager of the 1980 bill in the House of Representatives, explained the purpose of the provision:
> We . . . agreed to a provision clarifying the relationship between the remedy provided here and a possible separate remedy under OSHA. Certain railroad employees, such as employees working in shops, could qualify for both the new remedy provided in this legislation, or an existing remedy under OSHA. It is our intention that pursuit of one remedy should bar the other, so as to avoid resort to two separate remedies, which would only result in unneeded litigation and inconsistent results. 126 Cong. Rec. 26,532 (1980).

only hear disputes arising "out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions...". 45 U.S.C. § 153(i). Indeed, Reed's right to be terminated only for just cause, which was the issue before the arbitration board, arises not out of any provision of the RLA, but instead out of the collective bargaining agreement. As the Fourth Circuit noted in discussing the precursor to the current Election of Remedies provision, "[it] refers to federal statutes or regulations, not the common law remedies of the fifty states." *Rayner v. Smirl*, 873 F.2d 60, 66 n1 (4th Cir. 1989). Thus, a collective bargaining agreement can reasonably be understood not to be "another provision of law" as contemplated by the FRSA's Election of Remedies provision, which allows Reed's claim to proceed.

Moreover, language used in other provisions of the statute support a reading that grievances filed pursuant to a collective bargaining agreement are not encompassed by the phrase "another provision of law" in the Election of Remedies provision of the FSRA. For instance, Section 20109(h) states that "[n]othing in this section shall be deemed to diminish the rights . . . of any employee under any . . . collective bargaining agreement." Thus, this Court finds support in the adjoining provision for the interpretation that § 20109(f) does not prohibit Reed's current lawsuit by virtue of his pursuit of arbitration under the collective bargaining agreement.

Norfolk relies primarily on *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117 (1991), which interpreted the phrase "all other law" in an exemption provision of the Interstate Commerce Act to include collective bargaining agreements. 499 U.S. at 130. However, the Supreme Court in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), subsequently clarified that the holding in *Dispatchers* was limited to the particular statute at issue and was necessitated by the purpose of that statute. *See* 513 U.S. at 229 n.6. Therefore, *Dispatchers* does

7

not persuade this Court that Congress intended "another provision of law" to include collective bargaining agreements.

*2. Administrative Deference*

The foregoing strongly suggests an ambiguity in the statute because the FRSA's Election of Remedies provision can tolerate a reading contrary to the one advocated by Norfolk. This ambiguity justifies deferring to the interpretation of the Department of Labor under well settled principles of administrative deference. An administrative agency's reasonable interpretation of an ambiguous statute commands a significant amount of deference. *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984). An interpretation is unreasonable if it is "plainly erroneous or inconsistent" with apposite law. *Cent. States Southeast & Southwest Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766, 774 (7th Cir. 2010). The agency's interpretation will prevail so long as it is reasonable, even if it is "not necessarily the only possible interpretation, nor even the interpretation deemed most reasonable by the courts." *Energy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009).

Here, the Department of Labor has consistently taken the position that § 20109(f) is not triggered by an employee, such as Reed, pursuing arbitration under a collective bargaining agreement because a collective bargaining agreement is a private contract and not another provision of law. *See Mercier v. Norfolk Southern Corp., et al.*, Administrative Review Board Case No. 09-121; *see also* Brief Amicus Curiae of Assistant Secretary of Labor in *Mercier*, Dkt 32-1. Additionally, the Department of Labor interpretation avoids the potential conflict between § 20109(f) and § 20109(h), which Norfolk's assertions could create.

This Court allowed Norfolk to file supplemental authority in support of its motion for summary judgment. In *Norfolk S. Ry. Co. v. Solis*, CIV.A. 12-0306 BJR, 2013 WL 39226

8

(D.D.C. Jan. 3, 2013), Norfolk appealed the Administrative Review Board decision in *Mercier v. Norfolk Southern Corp., et al.*, which held that an employee's arbitration proceeding did not trigger the Election of Remedies provision found in § 20109(f). In *Solis*, Norfolk argued that the district court had subject-matter jurisdiction, despite the statutory preclusion of district court review of administrative action, under the doctrine of *Leedom v. Kyne*, 358 U.S. 184 (1958). In *Leedom*, the Supreme Court held that even where a statute does not allow for district court review of an administrative decision, a district court may nevertheless strike down an order of an administrative agency if that decision was "made in excess of [the agency's] delegated powers and contrary to a specific prohibition in the Act." *Leedom*, 358 U.S. at 188. The court in *Solis*, for purposes of determining subject-matter jurisdiction only, found that that the Administrative Review Board reading was "colorable under the statute, and not in violation of a clear, mandatory directive within the statute. Thus, [ ] the *Leedom* doctrine does not apply." *Solis*, 2013 WL 39226, *19. Because the district court did not have subject-matter jurisdiction, the case was dismissed. This Court notes that the ruling in *Solis* did not reach a decision on the merits because it lacked subject matter jurisdiction. The *Solis* ruling, however, does lend support to the conclusion that the statute is ambiguous and the Department of Labor's interpretation is reasonable. *Solis* demonstrates that this Court has jurisdiction to decide the issue presented here, but does nothing to persuade this Court that it is entitled to summary judgment as a matter of law.

   Based on the foregoing, Norfolk's motion for summary judgment is denied.

IT IS SO ORDERED.

Date: April 26, 2003           Entered: _____
                       Sharon Johnson Coleman